IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FEDERICO REYES VASQUEZ,<br><br>　　Petitioner,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of the Department of Homeland Security; TODD M. LYONS, in his official capacity as Acting Director of Immigration & Customs Enforcement; MICHAEL BERNACKE, in his official capacity as ICE Field Officer Director and Warden in current custody of Petitioner, et al.,<br><br>　　Respondents. | **MEMORANDUM DECISION AND ORDER ON MOTION FOR TEMPORARY RESTRAINING ORDER, MOTION TO AMEND, AND AMENDED PETITION**<br><br>Case No. 2:25-cv-01146-JNP<br><br>Chief District Judge Jill N. Parrish |

On December 19, 2025, Petitioner Federico Reyes Vasquez filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241(a), alleging he was being unlawfully confined in violation of the Constitution and laws of the United States. ECF No. 2. Petitioner then filed an amended petition. ECF No. 11. The court now considers Petitioner's request for leave to amend his amended petition, his emergency motion for a temporary restraining order, and his amended petition. ECF Nos. 43, 44. For the following reasons, the court denies the motion to amend and the motion for a temporary restraining order and dismisses the amended petition.

## BACKGROUND

Mr. Reyes Vasquez, a citizen of Mexico, alleges he entered the United States in 2005 without inspection. ECF No. 11 ¶ 38. Respondents allege Mr. Reyes Vasquez first entered illegally

in 2003 and was removed in March of that year. ECF No. 10 at 2–3. Respondents further allege that around 18 months later, Mr. Reyes Vasquez was arrested in Utah and convicted for driving under the influence. *Id.* at 4. He was then removed again based on a reinstated order of removal. *Id.*

On December 19, 2025, Mr. Reyes Vasquez was arrested by ICE. ECF No. 11 ¶ 38. Respondents detained Mr. Reyes Vasquez pursuant to a reinstated removal order, given his prior immigration history. ECF No. 10 at 2; ECF No. 21 at 3.

Counsel for Mr. Reyes Vasquez, believing he was being held in West Valley City, filed a habeas petition with this court, alleging Mr. Reyes Vasquez was being improperly detained without a bond hearing. ECF No. 1 at 10. That same day, as the court now knows, Mr. Reyes Vasquez was transported to Uinta County Detention Center in Wyoming. ECF No. 10 at 4; ECF No. 21 at 3.

On December 22, the court entered an Order to Show Cause, ordering that Mr. Reyes Vasquez not be removed. ECF No. 4. Counsel for Mr. Reyes Vasquez immediately emailed the December 22 Order to Respondents. ECF No. 11 ¶ 40.

However, Mr. Reyes Vasquez was removed from the United States on December 23, 2025. ECF No. 11 ¶ 41. He was first transferred to Florence, Arizona the morning of December 23 and then within a few hours was removed to Mexico. ECF No. 21 at 5. Respondents stated that "while ICE was made aware of an order preventing removal by e-mail on December 22, 2025 at 4:21 p.m. Mountain Standard Time and again on December 23, 2025 at 10:21 a.m., ICE ERO was not aware of the Court's order before it transferred and removed Petitioner." ECF No. 10 at 5.

On the same day that Mr. Reyes Vasquez was removed, his counsel filed a motion for sanctions, asking the court to enter an order requiring Respondents to explain why they should not be held in civil contempt and sanctioned for violating the court's December 22 Order. ECF No. 8.

2

The next day, on December 24, his counsel filed another motion, seeking to certify Mr. Reyes Vasquez as a victim of a qualifying U-Visa crime. ECF No. 9. This motion asserts that ICE's conduct constitutes witness tampering and obstruction of justice, as removal prevented Mr. Reyes Vasquez from attending his own habeas hearing. *Id.* at 2.

On December 29, counsel for Mr. Reyes Vasquez filed an amended petition. ECF No. 11. The Amended Petition asks the court to order Mr. Reyes Vasquez released from any continued detention and to further order that Mr. Reyes Vasquez not be removed until the initial U-visa Bona Fide Determination can be adjudicated. ECF No. 11 at 19.

Mr. Reyes Vasquez has by now been returned to the United States. Most recently, on February 6, 2026, counsel for Mr. Reyes Vasquez filed both a motion for leave to amend the Amended Petition and an emergency motion for a temporary restraining order. ECF Nos. 43, 44.

## LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Under 28 U.S.C. § 2241, a district court has the authority to grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Petitioner bears the burden of demonstrating his custody is in violation of the law. 28 U.S.C. § 2241(c)(3).

## ANALYSIS

The current habeas proceedings are non-traditional in the sense that the alleged basis for

the habeas claim has shifted during the pendency of the proceedings. Mr. Reyes Vasquez's initial habeas petition argued that he was subject to 8 U.S.C. § 1226 and thus entitled to a bond hearing. Respondents, in their response to the Order to Show Cause, asserted that Mr. Reyes Vasquez was actually subject to 8 U.S.C. § 1231 and was thus not entitled to a bond hearing. However, before Respondents even submitted their response, Mr. Reyes Vasquez was improperly removed from the United States. Mr. Reyes Vasquez then subsequently filed an amended petition, which contained claims based on the improper removal. Now that Mr. Reyes Vasquez has been returned to the United States by order of the court, he seeks leave to amend his petition to add claims based on his government-facilitated return.

The court first considers the motion for a temporary restraining order. It then considers the motion to amend and the Amended Petition itself.

## I. MOTION FOR TEMPORARY RESTRAINING ORDER

The court first addresses the motion for a temporary restraining order given its emergency nature. "Preliminary injunctive relief—whether a temporary restraining order or a preliminary injunction—'is an extraordinary remedy never awarded as of right.'" *Schiermeyer ex rel. Blockchain Game Partners, Inc. v. Thurston*, 697 F. Supp. 3d 1265, 1269 (D. Utah Oct. 9, 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

To obtain preliminary relief, a party must show that (1) it "is substantially likely to succeed on the merits"; (2) it "will suffer irreparable injury if the [preliminary relief] is denied"; (3) its "threatened injury outweighs the injury the opposing party will suffer under the [relief]"; and (4) "the [relief] would not be adverse to the public interest." *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016). The first two factors are "the most critical." *Szymakowski v. Utah High Sch. Activities Ass'n, Inc.*, 756 F. Supp. 3d 1238, 1247 (D. Utah 2024). To qualify for preliminary relief,

"the movant's right to relief must be clear and unequivocal." *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016).

Mr. Reyes Vasquez argues that he is likely to succeed on the merits of his detention claims. He specifically argues that Respondents lack a legal basis to currently detain him under 8 U.S.C. § 1231(a)(5). As Mr. Reyes Vasquez sees it, § 1231(a)(5), which deals with the reinstatement of prior orders of removal, applies only where a noncitizen "has reentered the United States *illegally* after having been removed." 8 U.S.C. § 1231(a)(5) (emphasis added). Because Mr. Reyes Vasquez's current presence in the country is government-facilitated,[1] he argues that § 1231(a)(5) is inapplicable and his detention is unlawful. Further, he argues that his "prolonged detention without individualized custody review raises serious constitutional concerns." ECF No. 44 at 7. Finally, he argues that there is a concrete and immediate risk of his removal during the ongoing proceedings, which would eliminate his access to statutory relief through the U-visa process.

In a case as meandering as this one, it is helpful to start at the beginning. As the court can now determine, when Mr. Reyes Vasquez was initially detained, his detention was proper pursuant to 8 U.S.C. § 1231(a)(5), as Respondents argue. Section 1231(a)(5) states that "[i]f the Attorney General finds that an alien has reentered the United States illegally after having been removed or

---

[1] In his motion for leave to amend, Mr. Reyes Vasquez argues in part that his current presence should be considered to be pursuant to parole under 8 U.S.C. § 1182(d)(5)(A). Section 1182(d)(5)(A) states that the Secretary of Homeland Security may, with certain exceptions, "in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States." Mr. Reyes Vasquez's arguments against his current detention, however, do not turn on whether he can be said to have been paroled into the United States. Instead, he appears to argue more broadly that reinstatement is not applicable to those "whose presence results from inspection, parole, or other governmental authorization." ECF No. 43-1 at 20.

having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry."

Here, Mr. Reyes Vasquez had a prior order of removal stemming from 2003, making § 1231(a)(5) applicable. Section 1231(a)(2) broadly mandates detention during the removal period, including for those subject to a reinstated order of removal. § 1231(a)(2)(A); *Johnson v. Guzman Chavez*, 594 U.S. 523, 535 (2021) ("§ 1231's detention provisions are a natural fit for [immigrants] subject to reinstated orders of removal."). Thus, Respondents were entitled to detain Mr. Reyes Vasquez. In addition, after being detained for only a few days, Mr. Reyes Vasquez was not entitled to a bond hearing. *See Zadvydas v. Davis*, 533 U.S. 678, 682 (2001).

Normally, Respondents would have also been able to remove Mr. Reyes Vasquez.[2] However, Mr. Reyes Vasquez, through his counsel, properly filed a habeas petition, admittedly wrongly asserting his detention without a bond hearing was in violation of the law. The court, seeking a response from Respondents before ruling on the petition and seeking to preserve its

---

[2] Counsel for Mr. Reyes Vasquez argued for the first time at a February 27, 2026 hearing on these motions that there were issues with the process followed in originally reinstating the prior order of removal. These claims, however, are not before the court in any petition. Furthermore, insofar as they attempt to challenge the procedures relating to the reinstatement of the prior order, it appears that Mr. Reyes Vasquez may have needed to pursue direct review to the relevant court of appeals. *Duran-Hernandez v. Ashcroft*, 348 F.3d 1158, 1162 (10th Cir. 2003); *Lorenzo v. Mukasey*, 508 F.3d 1278, 1282 (10th Cir. 2007); *see de Cerda v. Johnson*, No. 215CV00334BRBGBW, 2015 WL 12806493, at *2 (D.N.M. Oct. 7, 2015) ("The sole and exclusive means for reviewing the reinstatement, including the process given during the reinstatement, is through a petition for review, which the court of appeals has exclusive jurisdiction to hear. *See* 8 U.S.C. § 1252(a)(5)."); *Vizguerra-Ramirez v. Baltazar*, No. 25-CV-00881-NYW, 2025 WL 3653158, at *5 (D. Colo. Dec. 17, 2025) ("Section 1252(a) and Tenth Circuit precedent mandate that such claims be brought in a petition for review in the Tenth Circuit.").

jurisdiction and the status quo during the pendency of proceedings, ordered that Respondents not remove Mr. Reyes Vasquez.

As detailed, Mr. Reyes Vasquez was nevertheless removed, in direct violation of the court's order. The court then made clear it sought to return the proceedings to the status quo by having Mr. Reyes Vasquez returned to the United States. *Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (affirming a District Court's order requiring the government to facilitate a deportee's return "to ensure that his case is handled as it would have been").

Fundamentally, then, while Mr. Reyes Vasquez argues that allowing his current detention under § 1231(a)(5) would contravene Congress's intent, it is more readily apparent that Mr. Reyes Vasquez's new arguments seek to circumvent *the court's* intent to return the proceedings to the status quo prior to the improper removal.

Mr. Reyes Vasquez raises a variety of arguments under statutory frameworks relating to parole, reinstatement, and the execution of removal orders.[3] His arguments contend that his current presence could only come about in a manner that would render §1231(a)(5) inapplicable. He then argues that his detention without bond is not justified based on any other detention statute. But these arguments, while creative, ignore that the court had the inherent power to return these proceedings to the status quo. For example, the Supreme Court in *Noem v. Abrego Garcia* affirmed a court's order requiring the government to facilitate a noncitizen's return. In doing so, the Court noted that the order properly required the government "to ensure that his case is handled as it would have been had he not been improperly sent to El Salvador." *Noem v. Abrego Garcia*, 145 S.

---

[3] The court considers in this analysis the arguments made in Mr. Reyes Vasquez's motion to amend, which contain a more detailed version of the arguments in his motion for a TRO.

Ct. 1017, 1018 (2025). The status quo in this case was that Mr. Reyes Vasquez was detained pursuant to a reinstated order of removal while he pursued judicial review of his detention pursuant to his due process rights.

Additionally, the argument that government-facilitated return of a noncitizen may preclude detention under the same statutory basis that existed prior to a removal—here, § 1231—stands in tension with longstanding executive policy that has been endorsed in some respects by at least three justices. Justice Sotomayor, in respecting the disposition of the application in *Noem v. Abrego Garcia*, noted that "it has been the Government's own well-established policy to 'facilitate [a noncitizen's] return to the United States if . . . the [noncitizen's] presence is necessary for continued administrative removal proceedings' in cases where a noncitizen has been removed pending immigration proceedings." *Id.* at 1019. Justice Sotomayor cites to U. S. Immigration and Customs Enforcement's Directive 11061.1, "Facilitating the Return to the United States of Certain Lawfully Removed Aliens." The policy states that "ICE will regard the returned [noncitizen] as having reverted to the immigration status he or she held, if any, prior to the entry of the removal order and may detain the alien upon his or her return to the United States." U. S. Immigration and Customs Enforcement Directive 11061.1, Facilitating the Return to the United States of Certain Lawfully Removed Aliens, § 2 (Feb. 24, 2012).

While the policy specifically applies to those who have been ordered returned by the Supreme Court or appellate courts after petitioning for review of their administrative removal orders, its usage and accompanying analysis from courts that have considered its effect support the proposition that a noncitizen who is removed and who is then returned to the country regains his pre-removal condition, *even if* the return was considered parole. *See J.G.G. v. Trump*, No. CV 25-766 (JEB), 2026 WL 391937, at *3 (D.D.C. Feb. 12, 2026) (invoking Directive 11061.1 to order

deportees to be paroled into United States' custody and acknowledging that "they will be detained upon arrival"); *Igiebor v. Barr*, 981 F.3d 1123, 1128–30 (10th Cir. 2020) (noting that a noncitizen had the "potential to be restored to his pre-removal condition if th[e] court grant[ed] his petition" under Directive 11061.1); *Nken v. Holder*, 556 U.S. 418, 435 (2009) ("[Noncitizens] who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal.").

Mr. Reyes Vasquez responds that while his *immigration status* (or lack thereof) may remain unchanged, the government's ability to rely on the reinstated order of removal that has now been executed, even if against a court order, no longer persists. In his view, because the reinstated order was executed, the government must again reinstate the prior order of removal now. But, according to Mr. Reyes Vasquez, he no longer meets the criteria to enable reinstatement.

At bottom, Mr. Reyes Vasquez asserts that the court's power to restore the status quo extended only to bringing him physically back, not to returning the case—and the legal considerations at issue—to the conditions that existed ante. Notably, counsel for Mr. Reyes Vasquez argued otherwise in his earlier reply to his amended petition. He stated that the court's order "to restore that status quo that existed before DHS violated the Court's non-removal order" was put in place to "ensure[] that DHS cannot nullify judicial review through unilateral action and that the Court can adjudicate the case as it would have had DHS complied with the law." ECF No. 22 at 5–6.

The court agrees with Mr. Reyes Vasquez's earlier argument: it can restore the status quo and adjudicate the issues as if Respondents had complied with the court's non-removal order. The court's equitable powers to restore the status quo do not extend just to ordering the government to

9

facilitate Mr. Reyes Vasquez's return. Rather, it reverted the case and the legal positions of the parties to what they were prior to the violation of the court's order. *See Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 516 (D. Md. 2025) (quoting *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 236 (4th Cir. 2014)) (viewing restoring the status quo ante as bringing the case back to the "last uncontested status between the parties which preceded the controversy"). In this case, that means Mr. Reyes Vasquez is now in detention pursuant to a reinstated order of removal. Holding otherwise would artificially restrict the court's equitable powers to maintain or restore the status quo, particularly in the preliminary relief context, creating the opportunity for parties to risk violating court orders so that they may change the factual or legal conditions in a way that benefits them in the long run.

The court thus finds that Mr. Reyes Vasquez is unlikely to succeed on the merits of his claim that his current detention is unlawful. Pursuant to § 1231(a)(2), his detention is mandatory, and he would have been detained during the pendency of the court's habeas proceedings had he not been removed. In addition, after being detained for only a few weeks with ongoing habeas proceedings, Mr. Reyes Vasquez is not entitled to a bond hearing. *See Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). And, given the extant, binding non-removal order, the court does not find it necessary to issue a temporary restraining order re-ordering Respondents to not remove Mr. Reyes Vasquez during the pendency of these habeas proceedings.

Because the court finds that Mr. Reyes Vasquez's detention is lawful, he is unable to demonstrate that he faces a risk of immediate and irreparable harm. For similar reasons, the balance of equities does not favor Mr. Reyes Vasquez, and the public interest does not support injunctive relief. The court accordingly denies the motion for a temporary restraining order.

## II. MOTION FOR LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleadings once as a matter of course[.]" *See* Fed. R. Civ. P. 15(a)(1). After a responsive pleading has been served, however, a party "may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Under Rule 15(a), the court should "freely give leave when justice so requires." *Id.*

"Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

Because Mr. Reyes Vasquez's motion for a temporary restraining order raises the same arguments as those he seeks to add to his petition through his motion to amend—arguments which the court finds lack merit—the court denies the motion to amend due to futility of the proposed amendment.

## III. AMENDED PETITION

Given the court's denial of the motion for a temporary restraining order and the motion to amend, the court finds it prudent to rule on Mr. Reyes Vasquez's pending amended petition as well.

Mr. Reyes Vasquez's amended habeas petition primarily focuses on claims deriving from his improper removal. His amended petition alleges that his improper removal violated his Fifth Amendment Right of Access to the Courts, violated his First Amended Right to Petition the

Government, and constituted unlawful interference with the statutory right to seek U-visa relief.[4] ECF No. 11 ¶¶ 43–57.

Mr. Reyes Vasquez argues that he has demonstrated prima facie eligibility for a U-visa. ECF No. 11 ¶¶ 8–9. A U-visa grants temporary legal status for victims of certain specified crimes who help law enforcement (or, as relevant here, Federal Judges) investigate or prosecute the criminal activity. *See* 8 U.S.C. §§ 1101(a)(15)(U). Mr. Reyes Vasquez argues that the qualifying crimes here are "witness tampering and obstruction of justice . . . arising directly from Respondents' removal of Petitioner in violation of this Court's express non-removal order." *Id.* ¶ 9. As should be noted, USCIS retains sole jurisdiction over U-visa petitions. 8 C.F.R. § 214.14(c)(1). But Mr. Reyes Vasquez argues that the court should grant habeas relief to allow him to pursue the U-visa process.[5] *Id.*

According to Mr. Reyes Vasquez, this would entail either the court ordering Respondents to return Mr. Reyes Vasquez, or, in the alternative, to parole him or otherwise facilitate his presence

---

[4] Mr. Reyes Vasquez somewhat circularly argues that Respondents "obstruct[ed] [his] ability to seek U-visa relief through removal and continued detention." ECF No. 11 ¶ 57. To the extent that he argues he is entitled to U-visa relief, his improper removal and continued detention are apparently both the basis for that relief and the current alleged obstacle.

Further, the court need not address Mr. Reyes Vasquez's First Amendment and Fifth Amendment claims, which the court reads as primarily seeking his return so that he may apply for a U-visa. Mr. Reyes Vasquez has now been returned to the United States.

[5] Separately, Mr. Reyes Vasquez, through his counsel, asks the court to certify that he has been the victim of a qualifying crime and has been helpful, is being helpful, or is likely to be helpful in the investigation of the crime. *See* 8 U.S.C. §214.14(a)(12). Certification is a prerequisite to seeking a U-visa, and federal judges are indeed able to act as certifying officials. 8 U.S.C. §§ 214.14(a)(3)(ii); (b)(2). The court, however, exercises its discretion to deny the certification request. ECF No. 9; *see Bejarano v. Homeland Sec. Dep't*, 300 F. App'x 651 (11th Cir. 2008) (unpublished) (stating "any decision by the certifying official to sign or decline to sign the status certification is discretionary"). The court also denies the related motion for sanctions given the remedial steps taken after the violation of the court's order. ECF No. 8.

for the limited purpose of filing a Form I-918, which would begin the preliminary determination process under USCIS for U nonimmigrant status. *Id.* ¶ 14. As he states, "[c]ontinued detention or exclusion of Petitioner while this avenue of relief remains pending would not merely maintain the status quo; it would compound the original constitutional injury by preventing Petitioner from pursuing the very protections Congress provided in response to such misconduct." *Id.* ¶ 46.

Of course, the court has now already ordered Mr. Reyes Vasquez returned based on Respondents violating the non-removal order, and Mr. Reyes Vasquez is back in detention. But Mr. Reyes Vasquez seeks further relief in his amended petition. He ultimately asks the court to order DHS to release him while he pursues a U-visa, to order DHS to not act on the reinstated removal order until the preliminary bona fide determination can be adjudicated, and to award attorney's fees under the Equal Access to Justice Act, 42 U.S.C. § 1988 ("EAJA").

Mr. Reyes Vasquez does not provide support for his proposition that his continued detention is preventing him from pursuing U-visa relief. In fact, "[a]n [immigrant] who is the subject of a final order of removal, deportation, or exclusion is not precluded from filing a petition for U-1 nonimmigrant status directly with USCIS." 8 C.F.R. § 214.14(c)(1)(iii). Accordingly, the court finds that his continued detention, which is proper pursuant to § 1231(a)(5), does not constitute unlawful interference with the statutory right to seek U-visa relief.

Mr. Reyes Vasquez also seeks an order preventing Respondents from removing him again while he pursues U-visa relief. As noted, the court's non-removal order has been in effect during the pendency of these habeas proceedings. However, once the court resolves the petition, the non-removal order will cease. And because the court now finds that Mr. Reyes Vasquez's current detention under § 1231 is valid, Respondents may now choose to remove him or to grant him a

13

stay of removal.[6] The court, however, has no jurisdiction to regulate Respondents' decision.

Under § 1252(g) of the Immigration and Nationality Act, federal courts have no jurisdiction to review discretionary decisions—such as whether or not to grant a stay of removal. The provision provides that "no court shall have jurisdiction to hear any cause or claim . . . arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [immigrant.]" 8 U.S.C. § 1252(g).

The Supreme Court has narrowly construed § 1252(g). *See Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999). But the decision of whether to execute a removal order, pending an ongoing or future U-visa determination by USCIS, falls squarely within this narrow construction. *See, e.g.*, *Balogun v. Sessions*, 330 F. Supp. 3d 1211, 1212 (C.D. Cal. 2018) (citing cases). Because a decision to grant or not grant a stay of removal is inextricably associated with the actual decision to remove him or not, the court lacks jurisdiction to review the matter and prevent his future removal.

## CONCLUSION AND ORDER

For the above reasons, the court ORDERS:

1. Petitioner's motion for a temporary restraining order is DENIED. ECF No. 44.

2. Petitioner's motion for leave to amend the Amended Petition is DENIED. ECF No. 43.

3. The Amended Petition is DISMISSED. ECF No. 11.

---

[6] 8 C.F.R. § 214.14(c)(1)(ii) states: "The filing of a petition for U-1 nonimmigrant status has no effect on ICE's authority to execute a final order, although the [noncitizen] may file a request for a stay of removal pursuant to 8 CFR 241.6(a) and 8 CFR 1241.6(a). If the [noncitizen] is in detention pending execution of the final order, the time during which a stay is in effect will extend the period of detention (under the standards of 8 CFR 241.4) reasonably necessary to bring about the petitioner's removal."

4. Petitioner's motion for signing of I-918 Supplement B is DENIED. ECF No. 9.

5. Petitioner's motion for sanctions is DENIED. ECF No. 8.

Signed March 5, 2026.

                                  BY THE COURT

                                  _____
                                  Jill N. Parrish
                                  United States Chief District Judge